IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAREDA SIMMONS, Parent and Natural Guardian of A.S., a minor | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 24-1395 |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, this 15th day of October, 2024, upon consideration of the City of Philadelphia's "Motion to Dismiss Plaintiff's [Amended] Complaint for Failure to State a Claim" (Docket No. 9) and Plaintiff's response thereto, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

Plaintiff Sareda Simmons brings civil rights claims pursuant to 42 U.S.C. § 1983 against the City of Philadelphia ("the City") and Philadelphia Police Officers Crystal Harris and Gerald Rahill arising out of taser injuries her two-year-old son sustained during an arrest in Plaintiff's home.  The City has moved to dismiss Count III of the Amended Complaint, which asserts a municipal liability claim against it pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), arguing that the Count fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

The Amended Complaint alleges that on the evening of February 11, 2023, Defendants Harris and Rahill forced their way into Plaintiff's home, purportedly to investigate a domestic disturbance.  (Am. Compl. ¶¶ 12-13, 29.)  The officers and an adult resident engaged in a struggle, and several children, including Plaintiff's two-year-old son A.S., came downstairs to observe the commotion.  (<u>Id.</u> ¶¶ 2-3, 31-32.)  During the struggle, the officers discharged tasers, possibly while off balance, and at least once in the direction of A.S. and the other children.  (<u>Id.</u> ¶¶ 33-34, 36.)

A.S. was struck by a discharge and sustained serious injuries to his right eye and left chest.  (Id. ¶¶ 38-39, 52, 55.)   As a result, A.S. suffers from permanent disfigurement and total blindness in his right eye and will require an ocular prosthesis.  (Id. ¶¶ 52, 55.)

The Amended Complaint avers that the defendant officers' conduct amounted to an unreasonable seizure as well as excessive force in violation of A.S.'s Fourth Amendment rights. The Monell claim in Count III, which the City ask us to dismiss, seeks to hold the City liable for these alleged constitutional violations.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (citations omitted).  In applying this standard, we "are not required to accept merely conclusory factual allegations or legal assertions" but "must accept as true all plausible factual allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor."  In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (citations omitted).

Plaintiff's claims against the City are grounded in 42 U.S.C. § 1983 and Monell.  Section 1983 "provides remedies for deprivations of rights established in the Constitution."  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  A municipality cannot be held vicariously liable under § 1983 for the constitutional violations of its employees simply by virtue of employing them. Monell, 436 U.S. at 691.  Rather, the municipality is only liable for those violations caused by

official policy, persistent and widespread custom, or the failure to train municipal employees.  See Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (citations omitted).

Plaintiff asserts that the City is liable for A.S.'s injuries because they were caused by its deficient policy and its failure to adequately train the defendant officers.  Specifically, Plaintiff claims that the City's policy on taser use, Directive 10.3, is deficient because it fails to direct officers utilizing tasers to consider bystander safety, and does not prohibit taser use when there is a risk of injury to a child or bystander or when the officer is off balance.  (Am. Compl. ¶¶ 82-86, 101-102.)  She similarly asserts that the City's taser training is inadequate because it does not train officers to consider bystander safety when utilizing tasers, or to refrain from taser use in the vicinity of toddlers or when off balance.  (Id. ¶¶ 90-92, 103.)  The City argues in its Motion that Plaintiff cannot state a cognizable Monell claim against it on either basis.

A.    Deficient Policy

To state a Monell claim based on policy, a complaint must allege that: (1) a municipal policy deprived the plaintiff of a federally protected right; and (2) by enacting and maintaining the deficient policy, the municipality was the "moving force" behind the deprivation.  Monell, 520 U.S. at 403-04 (citations omitted).  A municipal policy is "an official proclamation, policy, or edict" issued by an individual "possess[ing] final authority to establish a municipal policy with respect to the action," known as a policymaker.  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (alteration in original) (quotation omitted).  Thus, the Amended Complaint must also allege a policymaker responsible for the deficient policy.

i.    Policymaker

The City first argues that Plaintiff's policy-based Monell claim fails because the Amended Complaint does not identify a responsible policymaker.  However, the Amended Complaint

3

specifically alleges that Directive 10.3 was "approved and enacted by the Police Commissioner" (Am. Compl. ¶¶ 24, 79), and Directive 10.3 itself states at its conclusion that it is "by command of the Police Commissioner" (City Mot. to Dismiss Ex. A ("Directive 10.3") at 17).[1]  Moreover, there can be no question that "the police commissioner, as the highest official within the Philadelphia Police Department, is a policymaker for purposes of municipal liability under § 1983."  Glass v. City of Philadelphia, 455 F. Supp. 2d 302, 342-43 (E.D. Pa. 2006) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990)).  Thus, we conclude that the Amended Complaint sufficiently alleges a municipal policymaker and reject the City's argument that the policy-based Monell claim should be dismissed on that basis.

   ii.  Causation

   The City alternatively argues that the Amended Complaint does not sufficiently allege that Directive 10.3 was the "moving force" behind the deprivation.  To be the "moving force" behind a deprivation for purposes of a policy-based Monell claim, the City must have acted "with the requisite degree of culpability" and there must be "a direct causal link" between its actions and the deprivation.  Bd. of Cnty Comm'rs of Bryan Cnty. v Brown, 520 U.S. 397, 404 (1997).

   The City argues that the Amended Complaint has not sufficiently alleged causation because it does not allege that Directive 10.3 called for unconstitutional action on its face.  However, the failure to allege a facially unconstitutional policy is not fatal to a Monell claim if the plaintiff instead alleges facts to show that "the municipal action was taken with deliberate indifference as to its known or obvious consequences" for constitutional rights.  Berg v. Cnty. of Allegheny, 219

---

[1] While not attached to the Amended Complaint, Directive 10.3 may be considered because it is an undisputedly authentic document upon which Plaintiff's claims are based.  See Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

F.3d 261, 276 (3d Cir. 2000) (alteration in original) (quoting <u>Bryan Cnty.</u>, 520 U.S. at 407) (citation omitted); <u>see also</u> <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584-85 (3d Cir. 2003) (reasoning that, despite the lack of an "affirmative policy" directing unconstitutional action, the failure to establish a policy to address "an obviously inadequate practice that was likely to result in the violation of constitutional rights" could support municipal liability).

Here, the Amended Complaint alleges that the use of tasers pursuant to Directive 10.3 posed a serious risk of harm to bystanders like A.S., and that policymakers were aware of that risk yet failed to address it.  (<u>Id.</u> ¶¶ 88, 93.)  At this early stage of the proceedings and drawing all reasonable inferences in Plaintiff's favor, we conclude that these allegations, in the context of the Amended Complaint as a whole, plausibly allege that the City was deliberately indifferent to the constitutional peril posed by its policy on taser use.  Accordingly, we reject the City's argument that the <u>Monell</u> claim grounded in the deficiencies of Directive 10.3 must be dismissed simply because the Amended Complaint does not allege a facially unconstitutional policy.

     B.    <u>Failure to Train</u>

The City also contends that the Amended Complaint fails to state a <u>Monell</u> claim based on inadequate training.  To state a training-based <u>Monell</u> claim, a plaintiff must plausibly allege that the failure to train: (1) "amounts to 'deliberate indifference' to the rights of persons with whom [municipal] employees will come into contact"; and (2) is "closely related to the ultimate injury," meaning that it "actually caused the constitutional violation."  <u>Thomas v. Cumberland Cnty.</u>, 749 F.3d 217, 222 (3d Cir. 2014) (quotations omitted).

     i.    Deliberate Indifference

The City first argues that the Amended Complaint does not plausibly allege deliberate indifference with respect to training.  To plead deliberate indifference in the failure-to-train

context, a plaintiff must allege facts that would show that: "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011)).

The City contends that the Amended Complaint does not allege a "history of employees mishandling" that would have put policymakers on notice of inadequacies in their training program. Id. (quotation omitted). Nonetheless, a single incident may demonstrate deliberate indifference in circumstances that involve "a difficult choice" that policymakers know employees will face and may decide wrongly to the detriment of constitutional rights. Id. (quotation omitted); see also Thomas, 749 F.3d at 223 ("[I]n certain situations, the need for training 'can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights' even without a pattern of constitutional violations." (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989))); Est. of Paone by & through Paone v. Plymouth Twp., Civ. A. No. 22-2178, 2023 WL 5044952, at *5 (E.D. Pa. Aug. 8, 2023) ("[The failure to allege prior incidents] is not fatal to Plaintiffs' claim . . . because they do plead enough facts to proceed on a single-incident liability theory."). Given "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the failure to train constitutes deliberate indifference. Bryan Cnty., 520 U.S. at 409. While cautioning that such circumstances are "rare," the Supreme Court has offered as an example a scenario in which officers are not trained in the constitutional limits on the use of deadly force against fleeing felons. Connick, 563 U.S. at 63-64. Because police are sure to encounter fleeing

felons, and because these encounters predictably involve the use of deadly force and a corresponding peril to constitutional rights, the failure to train amounts to deliberate indifference. Id.

Directive 10.3 makes clear that no officer may use a taser in the absence of annual training. (Directive 10.3 at 9 § 5(A)(1), (3).)   The Amended Complaint alleges that officers are trained in accordance with the City's deficient taser policy, i.e., Directive 10.3, and are specifically mandated to follow that policy when using tasers.  (Am. Compl. ¶ 90.)  The policy authorizes the use of tasers, which it characterizes as "less lethal force," "whenever the subject is physically aggressive or assaultive," and expressly contemplates the presence of bystanders like A.S.  (Directive 10.3 at 7; 1 § 2 (D), (F).)  Such situations in which bystanders are present, like the fleeing felon scenario posited by the Supreme Court, involve "[a]rmed police" making "split-second decisions" with serious consequences and "[t]here is no reason to assume that [the officers] are familiar with the [relevant] constitutional constraints" or can become familiar in the absence of training.  Connick, 563 U.S. at 64.  "Under those circumstances there is an obvious need for some form of training." Id.  Yet Directive 10.3, which allegedly provides the content for officer training, offers no guidance as to how to avoid injuring bystanders.  Moreover, the Amended Complaint alleges specific ways in which the training that is offered falls short.  (See Am. Compl. ¶¶ 90-92, 103.)

We therefore conclude that the Amended Complaint adequately alleges that: (1) the City "know[s] that employees will confront" situations involving the use of tasers around bystanders, as evidenced by Directive 10.3; (2) such situations involve "difficult choice[s]" implicating the safety and constitutional rights of multiple individuals; and (3) given the potentially dangerous weapons involved, "the wrong choice by an employee will frequently cause deprivation[s]" like the Fourth Amendment violations alleged.  Est. of Roman, 914 F.3d at 798 (quotation omitted);

(see also Am. Compl. ¶¶ 88, 93.)  Thus, the Amended Complaint plausibly alleges at this early stage of the proceedings, before any discovery, that the purported failure-to-train constituted deliberate indifference, and the absence of allegations of prior incidents is immaterial.  Cf. Est. of Paone, 2023 WL 5044952, at *6 ("Whether Plaintiffs can prove Township policymakers ignored an 'obvious risk' is something to be decided after discovery." (citing Alexander v. Bucks Cnty., Civ. A. No. 21-4633, 2023 WL 3229928, at *10 (E.D. Pa. May 2, 2023))).

      ii.    Causation

The City alternatively argues that the Amended Complaint does not state a plausible Monell claim based on a failure-to-train theory because it does not adequately allege the second element of such a claim, i.e., that the failure to train caused the constitutional violation.  To plead this element of the claim, a complaint must allege that "the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." Thomas, 749 F.3d at 226 (alteration in original) (quoting City of Canton, 489 U.S. at 391).

Here, the Amended Complaint specifically alleges that at the time the injuries were inflicted, the defendant officers discharged their tasers while off balance and unable to control the direction of the discharge.  (Am. Compl. ¶ 34.)  It further alleges that they discharged the tasers "without regard to the safety of others," in the vicinity and indeed the direction of A.S. and the other children.  (Id. ¶¶ 33, 36, 94.)  These allegations support the reasonable inference that A.S.'s injuries "[could] have been avoided had the [defendant officers] been trained" to consider the safety of others and not to discharge their tasers around toddlers or while off balance.  Thomas, 749 F.3d at 226 (first alteration in original) (quotation omitted); (see also Am. Compl. ¶¶ 90-92.) Thus, we reject the City's contentions that causation has not been sufficiently alleged, and that the Monell claim grounded on a failure to train should be dismissed on that basis.

For the foregoing reasons, we conclude that Plaintiff has plausibly alleged a <u>Monell</u> claim against the City based on both deficient policy and inadequate training.  Accordingly, the Motion to Dismiss is denied.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.